IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHERYL EMILY GRAVES and DON GRAVES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. CIV-08-35-F |
| MAZDA MOTOR CORPORATION, | ) ) | |
| Defendant. | ) | |

## ORDER

Before the court is defendant's "Unopposed Motion to Withdraw Affirmative Defense No. 19 and for Relief From The Court's 8/7/08 Order," (doc. no. 27).  As the title of the motion indicates, the motion is unopposed.  Nevertheless, something more than cursory treatment of this motion is warranted.

A.    Procedural history.

The complaint in this product liability action was filed on January 11, 2008. The plaintiffs, Cheryl Graves and Don Graves, husband and wife, allege that Mrs. Graves was injured on February 11, 2007 when she was hit by a 2006 Mazda automobile which she had been driving and had parked in a driveway with the engine running.  She asserts that: "[A]fter stepping out of the vehicle, [Cheryl Graves] was struck by the vehicle, which apparently had shifted into reverse."  Complaint, ¶ 6. Plaintiffs allege that the automobile was defective because it "is prone to experiencing a false park," because it "is prone to shifting out of gear while the vehicle is running," and because it "is prone to not having its shift lever engaged fully into the park

position." Complaint, ¶ 9. Mrs. Graves seeks to recover damages for her alleged injuries. Her husband, Don Graves, asserts derivative claims.

Defendant filed its answer on June 23, 2008 (doc. no. 12). Paragraph 19, in the "affirmative defenses" section of defendants' answer, includes the following insertion:

> 19. By [r]equest to this Court's equity jurisdiction, Defendant believes and asserts that Plaintiffs' counsel has a financial interest in this litigation and intends to profit by a large percentage based on Plaintiffs' success, if any, in this litigation. It is therefore only fair–and Defendant requests under this Court's equity jurisdiction–that Defendant be able to assert a claim against Plaintiffs' counsel personally for any costs and expenses taxed to Plaintiff in that same percentage, and to collect from either Plaintiffs and/or their counsel.

Answer, p. 5.

On July 14, 2008, the court issued its notice for a status and scheduling conference to be held on August 7, 2008. The notice for the status and scheduling conference said that "counsel should carefully read and heed Sections 3 and 4 of the OBA Standards of Professionalism, adopted by the OBA on November 20, 2002 (accessible at the OBA website)." *See* doc. no. 14, at 2. As required by the notice for the status and scheduling conference, the parties filed their joint status report on August 4, 2008 (doc. no. 22). Defendant's statement of its contentions, as set forth in the joint status report, repeats paragraph 19 of defendant's answer, as quoted above.

The defendant's assertion, set forth in paragraph 19 of its answer and repeated in the joint status report, that plaintiffs' counsel should be held personally liable for costs, unaccompanied by any assertion that the conduct of plaintiffs' counsel had triggered liability under any of the familiar bases for imposing personal financial liability on counsel, caught the attention of the court. Accordingly, at the status and scheduling conference held on August 7, 2008, the court inquired of defendant's counsel, Daniel D. Draper III, as to the legal basis for this assertion. Aside from

making a very general reference to the court's equity powers, counsel was unable to cite any authority for this theory of personal liability of opposing counsel. When pressed, counsel's explanation for paragraph 19 of Mazda's answer was, in substance, that this was Mazda's idea – that Mazda had grown tired of being sued by plaintiffs represented by the lawyer representing these plaintiffs, that, as far as Mazda is concerned, this case amounts to nothing more than an attempt at extortion, and that Mazda had accordingly instructed him to include paragraph 19 in Mazda's answer. Thus, the gist of Mr. Draper's responses to the court's inquiries was that this assertion, to which he had subscribed as an officer of the court in the answer and in the joint status report, was Mazda's theory, was not bottomed on any legal authority Mr. Draper could cite, and was essentially rooted in Mazda's displeasure at having been sued by a plaintiff represented by counsel that Mazda had seen before. Viewed in this light, counsel's inability to support Mazda's theory of personal liability of opposing counsel with any cogent authority was, thus, understandable, if not excusable.

As a result of counsel's inability to articulate a legal basis for Mazda's assertion of personal liability on part of plaintiffs' counsel, the court entered the following order on August 7, 2008:

> The court has concluded, *sua sponte*, that it should determine whether paragraph 19 should be stricken from defendant's answer (doc. no. 12). Defendant is directed to file a brief with respect to paragraph 19 of its answer not later than August 28, 2008. Defendant's brief shall provide the specific legal basis, with citation to the authorities upon which defendant relies, for defendant's assertion, in the absence of any suggestion of sanctionable conduct, that the court should adjudicate plaintiffs' counsel to be personally liable for a portion of any costs which may ultimately be taxed against the plaintiffs in this action. Plaintiffs shall file their response to defendant's brief not later than September 18, 2008. Defendant may file a reply not later than September 29, 2008. A hearing as to the issues thus framed shall be held on October 7, 2008, at 1:30 p.m.

3

Doc. no. 24.

Following entry of the August 7 order, defendant filed its motion - the motion now before the court - to withdraw affirmative defense number 19.  Doc. no. 27.  In that motion, the defendant, although lamenting that it had been subjected to "baseless, un-investigated, un-supported claims of product defect," doc. no. 27, at 2, stated that it desired to withdraw affirmative defense number 19 and to be relieved from the requirement, set forth in the court's August 7 order, that it file a brief substantiating the legal basis for affirmative defense number 19.  After reviewing the motion to withdraw affirmative defense number 19, the court vacated its August 7 order and struck the hearing which had been set in that order, but took under advisement the request to withdraw affirmative defense number 19.  *See* doc. no. 28.  Shortly after that, defendant filed a supplement to the present motion.  In the supplement to the motion, defendant asserted that plaintiffs' discovery responses (served on August 22, 2008) were deficient and contended that:

> Plaintiffs/counsel are required to have a legitimate basis for bringing this lawsuit, based upon proper and adequate investigation and evidentiary support for their factual contentions and causes of action.  Plaintiffs likewise are obligated to have a legitimate theory and factual/evidentiary basis for their claims of alleged defect (including what type of alleged defect).

Doc. no. 29, at 3 (footnotes citing authority omitted).[1]

B.    Discussion.

No extensive citation of authority is necessary to describe the court's well-established power to impose personal financial liability on counsel who violate their professional obligations as officers of the court.  *See, e.g.*, Rule 11, Fed.R.Civ.P.,

---

[1]  As has been noted, defendant's supplement was filed on August 25, 2008, three months ago.  No motion challenging the sufficiency of plaintiffs' discovery responses has been filed.

28 U.S.C. § 1927, <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32 (1991) (inherent power of the court), <u>Steinert v. Winn Group, Inc.</u>, 440 F.3d 1214 (10th Cir. 2006) (same), and <u>Resolution Trust Corp. v Dabney</u>, 73 F.3d 262 (10th Cir. 1995) (same).

Although Mazda has cited no authority for its theory of personal liability of plaintiffs' counsel (and, by the present motion, seeks to be excused from trying to find any such authority), the practical justification it proffers for its theory of personal liability is apparently rooted in the fact that it does not want to be sued by plaintiffs represented by these plaintiffs' counsel. This, evidently, is the business reason, albeit not the legal reason, for which Mazda – although maintaining that these plaintiffs' claims are baseless – seeks to impose personal liability on plaintiffs' counsel without having to satisfy the court that plaintiffs' counsel have transgressed the well-established boundaries of professional conduct to be found in Rule 11 or Section 1927 or the court's broad and adaptable inherent power.

The court will grant Mazda's motion to withdraw affirmative defense number 19 because no pleading asserting that so-called defense should have been filed in the first place. It is one thing for a litigant to assert, even at the outset of litigation, that the lawyer for the opposing party has violated a well-established rule of professional behavior and should be held personally liable for that violation. It is quite another thing to file a pleading asserting, at the very outset of the case, that opposing counsel should be held personally liable for a percentage of the defendant's "costs and expenses" which is commensurate with the percentage of plaintiffs' counsel's participation in a recovery contemplated by the contingent fee agreement which is presumed to exist. That is a litigation tactic, and nothing more, which falls far short of the court's legitimate expectations of litigants and their counsel.

The expectation which is most relevant here is the court's expectation of counsel, as officers of this court.

5

About twenty years ago, courts, commentators and bar organizations found it necessary to address what was then a relatively new and unwelcome trend in litigation conduct – commonly referred to as "hardball" litigation tactics – which signaled a noticeable decline in the standards of civility to which most lawyers had adhered for as long as anyone could remember.  *See, e.g.,* Dondi Properties, Inc. v Commerce Savings and Loan Ass'n, 121 F.R.D. 284 (N.D. Tex. 1988).  Practitioners of hardball litigation tactics often sought to justify their approach to litigation by insisting that "I'm just representing my client" – the implication being that the lawyer's duty to his client is breached if even a remote possibility of gaining an advantage is sacrificed to notions of civility.  Thus, Professor Monroe Freedman has opined that "Civility [in the context of litigation tactics] is simply a euphemism for the old boy network, for covering up for each other."  (As quoted in Goldberg, "Playing Hardball," Am. Bar Assn. Journal, July 1, 1987, at 48.)  However, there is no support, from any authoritative source (old or new), for the proposition that a lawyer's duty to his client includes a duty to engage in offensive or abusive conduct, even if that conduct falls short of being sanctionable.

One of the earliest American attempts to make an organized statement of a lawyer's duties was that of David Hoffman (1784-1854), of the Maryland bar.  Hoffman published "Hoffman's Fifty Resolutions in Regard to Professional Deportment."[2]  Resolution No. 10 concisely expresses Hoffman's view of the matter:

> 10.    Should my client be disposed to insist on captious requisitions, or frivolous and vexatious defenses, they shall be neither enforced nor countenanced by me.  And if still adhered to by him from a hope of pressing the other party into an unjust compromise, or with any other motive, he shall have the option to select other counsel.

---

[2] Now found at: http://www.drbilllong.com/LegalHistory/EthicsIII.html, and in H. Drinker, Legal Ethics, at App. E (Columbia University Press, 1953).

6

It is clear from Hoffman, and from the generations of writers who followed, that practitioners of hardball tactics have no claim to historical legitimacy. Thus, more than 60 years after Hoffman wrote his resolutions, Professor Alexander H. Robbins, who participated in the formulation of the American Bar Association's 1908 Canons, reaffirmed Hoffman's view of a lawyer's dual responsibility to his client and to the judicial system:

> Nor is an attorney under obligations to minister to the malevolence or prejudices of a client in the trial or conduct of a cause . . . . Nor is he to abuse the process of the court in order to compel settlement of a demand.

Robbins, A Treatise on American Advocacy, p. 276 (2d ed., 1913).[3]

These principles are old but not quaint. The gained greater currency as courts and bar organizations contended with the rise of hardball tactics twenty years ago. These efforts gave rise to the adoption of statements of principles (principles not, at least since the day Hoffman wrote his Fifty Resolutions, thought to be in need of formal expression and compilation) by such organizations as the Oklahoma Bar Association and the American College of Trial Lawyers, among many others.

The Board of Governors of the Oklahoma Bar Association adopted the Lawyer's Creed in November, 1989. As relevant here, the lawyer's creed states that: "I recognize that my conduct is not governed solely by the Code of Professional Responsibility, but also by standards of fundamental decency and courtesy." In the same vein, the Board of Regents of the American College of Trial Lawyers adopted the Standards for Trial Conduct in 2005. As is explained in the introduction to the standards, the 2005 standards were part of a series of standards that had been adopted

---

[3] The foregoing discussion is drawn substantially from Friot, The Oklahoma Bar Association's Lawyer's Creed and Guidelines of Professional Courtesy, 61 Okla. Bar Journal 1581 (1990).

by the American College, beginning in 1956, with a view to promoting professionalism and civility. The annotation to paragraph 13 of the standards (Relations with Opposing Counsel) states, in pertinent part, that: "If a client insists on a course of conduct that violates the lawyer's professionalism, the lawyer should refuse to follow the client's instructions." *Id.*, ¶ 13.2.

No authority supporting Mazda's theory of personal liability of plaintiffs' counsel has been cited, and the court is aware of none. Mazda's counsel chose to acquiesce in their client's demands with a view to increasing opposing counsel's downside risk in the event of entry of judgment in favor of the defendant. If, as Mazda presumes, plaintiffs' counsel has been employed on the basis of a contingent fee agreement, then it is also reasonably presumable that plaintiffs' counsel, in prosecuting plaintiffs' claims, is advancing significant sums of money for expert fees and other litigation expenses. It may also be reasonably presumed that Mazda and its counsel are well aware of the existing and well established bases upon which personal liability may be imposed upon a member of the bar of this court for violating his professional obligations. Unsatisfied with those economic and legal constraints, Mazda prevailed on its counsel to go after plaintiffs' counsel from the very outset, threatening, in its very first pleading in this case, to seek an adjudication of personal liability on the part of plaintiffs' counsel. Mazda and its counsel have now wisely chosen to abandon this tactic. One moral of this story, among others, is that adherence to basic tenets of professionalism sometimes requires officers of this court to have some backbone in contending with the demands of their own clients, difficult though that may sometimes be. That requirement of backbone goes to the very essence of what it means to be a professional and not a mere tradesman.

C.      Conclusion.

Mazda's Motion to Withdraw Affirmative Defense No. 19 (doc. no. 27) is
**GRANTED**.

Dated November 24, 2008.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-0035p011(pub).wpd